# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| THERESA K.,[1] | : | Case No. 3:23-cv-00012 |
| Plaintiff, | : | |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | (by full consent of the parties) |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

# DECISION AND ORDER

Plaintiff filed an application for Disability Insurance Benefits in September 2020. Plaintiff's claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, this Court REVERSES the Commissioner's decision and REMANDS for further proceedings.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

I.  **BACKGROUND**

Plaintiff asserts that she has been under a disability since July 10, 2020. At that time, she was fifty-one years old. Accordingly, Plaintiff was considered a "person closely approaching advanced age" under Social Security regulations. 20 C.F.R. § 404.1563(d). Plaintiff has a "high school education and above." 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 7) is summarized in the ALJ's decision ("Decision," Doc. No. 7-2 at PageID 35-66), Plaintiff's Statement of Errors ("SE," Doc. No. 9), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 11), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 12). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

II.  **STANDARD OF REVIEW**

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "[W]hether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d

399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence

3

supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

### III. FACTS

#### A. The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

| | | |
|---|---|---|
| Step 1: | | Plaintiff has not engaged in substantial gainful activity since July 10, 2020, the alleged onset date. |
| Step 2: | | She has the severe impairments of idiopathic hypersomnia, degenerative disc disease of the lumbar spine, osteoarthritis, plantar fasciitis, fibromyalgia, Sjogren's syndrome, migraines, Hashimoto disease, coronary artery disease, irritable bowel syndrome, obesity, a depressive disorder, and a neurocognitive impairment. |
| Step 3: | | She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | | Her residual functional capacity (RFC), or the most she can do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20 C.F.R. § 404.1567(b), subject to the following limitations: "[She is |

4

> limited to] lifting and/or carrying twenty pounds occasionally and ten pounds frequently. She is limited to standing and/or walking for about four hours per eight-hour workday and is able to sit for about six hours per eight-hour workday. She is limited to no climbing of ladders, ropes, or scaffolds with frequent balancing and occasional stooping, kneeling, crouching, crawling, and climbing of ramps and stairs. She is able to frequently handle and finger bilaterally. She should avoid unprotected heights. [Plaintiff] is able to perform tasks that are not at a production rate pace and without strict performance quotas. She is able to tolerate occasional changes to a routine work setting defined as one to two per week."
>
> She is unable to perform any of her past relevant work.

Step 5: Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform.

(Decision, Doc. No. 7-2 at PageID 40-61.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 61.)

### B. Plaintiff's Migraine Headaches

#### 1. *Subjective Complaints*

Plaintiff alleged that she was disabled by several physical and mental impairments, including migraine headaches. (AR, Doc. No. 7-6 at PageID 265.) Plaintiff saw a neurologist for frequent migraines and he prescribed medication and administered occipital nerve block injections. (*Id.* at PageID 268-70.) According to Plaintiff, the combination of her medical conditions—including her migraines—caused difficulty with work functions such as comprehending written materials, remembering deadlines, and following conversations. (*Id.* at PageID 289.) Plaintiff testified at the November 2021 hearing that she experienced migraine headaches with left-sided tingling, vision

5

problems, nausea, and confusion. (*Id.* at PageID 92-93.) Plaintiff said that her migraines occurred five to six times per month and lasted for one to two days. (*Id.*)

    2.    *Medical Records*

Plaintiff was diagnosed with migraine headaches no later than March 2017, more than three years before the alleged onset date of disability. (AR, Doc. No. 7-8 at PageID 843.) A few months before the April 2020 onset date, Plaintiff told neurologist Michael Valle, D.O. that she had one migraine per month and her medication was "not always effective." (*Id*. at PageID 930). She also reported "frequent, milder headaches" that worsened with stress. (*Id.*) Dr. Valle adjusted her Midrin dosage. (*Id.*)

A June 2020 brain MRI showed minimal nonspecific white matter disease that was "presumed microischemic rather than demyelinating and possibly migraine[-]related." (AR, Doc. No. 7-7 at PageID 541.)

Plaintiff was hospitalized overnight after a blackout spell on June 17, 2020. (*Id.* at PageID 404-05). She complained to her primary care provider later that month that her migraines had worsened since the hospitalization and that she had experienced "at least [fifteen] migraine days." (*Id.* at PageID 701-02.) Plaintiff's provider prescribed a Toradol shot, monthly Ajovy injections, and Zofran for nausea. (*Id.* at PageID 702.)

Plaintiff saw neurologist Jon Durrani, D.O. on July 23, 2020. (AR, Doc. No. 7-7 at PageID 680.) Plaintiff reported that her headaches were "a lot less severe" since starting Ajovy. (*Id.* at PageID 685.) Dr. Durrani observed that Plaintiff's memory and attention appeared intact, but she exhibited a depressed mood. (*Id.*) Dr. Durrani continued Plaintiff on the Ajovy injections. (*Id.* at PageID 686.)

In August 2020, Plaintiff told her primary care provider that her headaches caused severe, piercing, and stabbing pain and required her to lie down in a dark room and apply ice. (AR, Doc. No. 7-8 at PageID 859.) Plaintiff also said that she had taken two days off of work each week for the past three weeks because of the headaches.[2] (*Id.*)

When Plaintiff visited her neurologist in October 2020, she reported that Ajovy had been "extremely helpful" and she was "down to about [three] migraines per month." (AR, Doc. No. 7-8 at PageID 789.) She said that stress and weather triggered headaches but they were responsive to Midrin. (*Id.*) Dr. Durrani advised Plaintiff to begin tapering her Baclofen dosage "to simplify her medication list since she [was] doing so well on the Ajovy." (*Id.*)

However, at the next visit with Dr. Durrani in February 2021, Plaintiff reported that she was "back to a daily headache." (*Id.* at PageID 782). She stated that she took Midrin three to four times per week and that although it generally worked well, she "sometimes need[ed] a second dose." (*Id.* at PageID 782.) Dr. Durrani attributed the increase in Plaintiff's migraines to the recent decrease in her Baclofen dosage, and so instructed Plaintiff to gradually increase Baclofen. (*Id.* at PageID 784.) Dr. Durrani also gave Plaintiff samples of Ubrelvy as an alternative to Midrin. (*Id.*)

---

[2] Although Plaintiff's statements to her primary care provider indicate that she was still working after the alleged disability onset date, Plaintiff testified that she reduced her work schedule in July 2020 and was working only three days per week at this time. (AR, Doc. No. 7-2 at PageID 82, 85.) She said she stopped working in approximately September 2020. (*Id.* at PageID 85.) The ALJ concluded at Step One that although Plaintiff worked after the alleged disability onset date, this work activity did not constitute "substantial gainful activity" as defined in the regulations. (Decision, Doc. No. 7-2 at PageID 40-41.)

Later that month, Plaintiff sought treatment from her primary care provider for a severe migraine accompanied by nausea, photophobia, lightheadedness, and tingling in the extremities. (AR, Doc. No. 7-8 at PageID 844.) She said that neither Midrin nor Ubrelvy had helped. (*Id.*) Her provider administered a pain injection. (*Id.* at PageID 845.)

In April 2021, Plaintiff told her neurologist that she was still experiencing daily headaches. (AR, Doc. No. 7-8 at PageID 879.) She believed that Baclofen and Ajovy helped to make her headaches "less intense." (*Id.*) Plaintiff had not filled the Ubrelvy prescription and was not using Midrin as much. (*Id.*) Plaintiff reported some intermittent confusion and dizzy spells, and wanted her migraines to be under better control. (*Id.* at PageID 879-80.) Dr. Durrani ordered genetic testing to determine the effectiveness of her medications and re-prescribed Ubrelvy. (*Id.*)

At her next visit with Dr. Durrani in May 2021, she reported that she was still experiencing one migraine per week. (AR, Doc. No. 7-9 at PageID 1117.) She said that these migraines lasted one to two days if she did not take her medication. (*Id.*) Based on the genetic testing results, Dr. Durrani recommended increasing her Cymbalta dosage. (*Id.* at PageID 1117, 1119.) Dr. Durrani noted that Plaintiff was waiting on insurance approval for Ubrelvy. (*Id.* at PageID 1119.)

During a follow-up visit for Sjogren's syndrome in August 2021, Plaintiff told Shobha Wani, M.D. that her migraines were "better" after recent changes to her medications. (AR, Doc. No. 7-9 at PageID 1082.) When Plaintiff saw her primary care provider in August 2021, she said that she had started Ubrelvy and that the medication had been "well-tolerated and effective." (*Id.* at PageID 1102, 1104.) However, Plaintiff

8

said that although the frequency and severity of her migraines had decreased, she was still experiencing approximately two migraines per month. (*Id.*)

### 3. The ALJ's Decision

At Step Two, the ALJ concluded that migraine headaches constituted a "severe" impairment as defined in 20 C.F.R. § 404.1520(c). (Decision, Doc. No. 7-2 at PageID 41.) The ALJ addressed Plaintiff's headaches at Step 3 and concluded that they did not medically equal a listed impairment in the Listing of Impairments:

> Fibromyalgia, obesity, and migraines do not have listings, but they were duly considered pursuant to SSRs 12-2p, 19-2p, and 19-4p,[3] respectively, and do not cause [Plaintiff] to meet or medically equal any listing. Using the guidance of SSR 19-4p, [Plaintiff's] migraines were considered under listing 11.02 (epilepsy), but her headaches do not have the requisite signs, symptoms, and frequency to meet that listing. Additionally, no State Agency medical expert opined [Plaintiff] meets or medically equals any listing. Accordingly, the severity of [Plaintiff's] physical impairments, considered singly and in combination, does not meet or medically equal the criteria of any listing in 20 CFR Part 404, Subpart P, Appendix 1.

(*Id.* at PageID 42.)

The ALJ considered Plaintiff's migraines when formulating the RFC assessment. (Decision, Doc. No. 7-2 at PageID 46-53.) The ALJ summarized Plaintiff's subjective complaints and acknowledged that she alleged disability based on migraine headaches, among other physical and mental impairments. (*Id.* at PageID 46.) He cited Plaintiff's testimony that she experienced five to six migraines per month, and that each one lasted for one to two days and involved confusion, vision problems, and left-sided tingling. (*Id.*

---

[3] Social Security Ruling (SSR) 19-4p governs an ALJ's consideration of headache disorders in the Sequential Evaluation. SSR 19-4p, 2019 WL 4169635 (August 26, 2019).

at PageID 47.) After describing the applicable legal standard for evaluating Plaintiff's subjective complaints, the ALJ concluded that although Plaintiff's impairments could reasonably be expected to cause some of her symptoms, the "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*) With respect to her migraines, the ALJ found that Plaintiff "generally had only a couple of migraine days per month, which usually responded to abortive medication when she took it as prescribed." (*Id.* at PageID 53.)

## IV.  LAW AND ANALYSIS

### A.  Plaintiff's Assignments of Error

Plaintiff asserts that the ALJ erred by "failing to include any limitations related to [her] migraine headaches in the RFC . . . contrary to his own finding that her migraines are 'severe.'" (SE, Doc. No. 9 at PageID 1199.) Plaintiff also asserts that "[t]he ALJ's credibility assessment is generally defective because of the [first] error, and specifically so because he neglected to consider Plaintiff's strong work history." (*Id.*) Finding error in the ALJ's analysis of Plaintiff's migraine headaches, the Court does not address Plaintiff's other alleged error and instead instructs the ALJ to address both of them on remand.

### B.  The ALJ Reversibly Erred In His Analysis Of Plaintiff's Migraine Headaches.

#### 1.  Applicable law

A claimant's RFC describes the most she can do in a work setting despite her physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). Determination of the RFC is

10

a task reserved for the ALJ. 20 C.F.R. § 404.1546(c); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of his [RFC]'"). When formulating the RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). The ALJ must base the RFC on all relevant evidence in the record, including the claimant's descriptions of his limitations and symptoms, objective medical evidence, medical opinions, other medical evidence, evidence from non-medical sources, and prior administrative medical findings. *See* 20 C.F.R. § 404.1545(a)(1)-(5).

Significantly, an ALJ is required "to show his or her work." *Scott K. v. Comm'r of the SSA*, No. 3:21-CV-00129, 2022 U.S. Dist. LEXIS 175673, at *11 (S.D. Ohio Sept. 27, 2022) (Silvain, M.J.) (internal citation omitted). An ALJ must "build an accurate and logical bridge between the evidence and his conclusion." *Amber S. v. Comm'r of the SSA*, No. 2:22-cv-2240, 2023 U.S. Dist. LEXIS 171553, at *12 (S.D. Ohio Sept. 26, 2023) (Silvain, M.J.) (citing *Fleischer v. Astrue*, 77 F. Supp. 2d 875, 877 (N.D. Ohio 2011)). An ALJ also "must articulate with specificity reasons for the findings and conclusions that he or she makes." *Bailey v. Comm'r of Soc. Sec.*, No. 98-3061, 1999 U.S. App. LEXIS 12674, 1999 WL 96920, at *4 (6th Cir. Feb. 2, 1999); *accord Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985) (articulation of reasons for disability decision essential to meaningful appellate review); SSR 82-62, 1982 WL 31386, at *4 (Soc. Sec. Admin. Jan. 1, 1982) (the "rationale for a disability decision must be written so that a clear picture of the case can be obtained").

Accordingly, "[t]his Court cannot uphold an ALJ's decision, even if there if there is enough evidence in the record to support the decision, where the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer*, 774 F. Supp. 2d at 877 (cleaned up) (internal quotations and citation omitted). *See also Hardiman v. Comm'r of Soc. Sec.*, No. 2:12-CV-00508, 2013 U.S. Dist. LEXIS 99023, at *15 (S.D. Ohio July 16, 2013) (Preston Deavers, M.J.) (remanding case on the ground that "the ALJ's decision is internally inconsistent and incomplete").

### 2. The ALJ did not build a logical bridge between the evidence of Plaintiff's migraine headaches and the RFC.

The ALJ provided only a cursory explanation of why he limited Plaintiff to the reduced range of light work in the RFC. That cursory explanation did not address how the RFC limitations account for Plaintiff's migraine headaches. Because the ALJ's decision did not build a logical bridge between the evidence and the ALJ's conclusions about Plaintiff's migraines, reversal is required.

The ALJ provided a detailed summary of the medical evidence relating to Plaintiff's migraine headaches. (Decision, Doc. No. 7-2 at PageID 47-53.) The ALJ described Plaintiff's condition and treatment prior to the alleged disability onset date. (*Id.* at PageID 47-50.) The ALJ noted that Plaintiff began taking Ajovy and Zofran after she reported an increase in migraine frequency. (*Id.* at PageID 50). The ALJ acknowledged that a June 2020 brain MRI showed findings that were "possibly migraine[-]related." (*Id.* at PageID 50.) The ALJ cited subsequent records that showed that her migraines were improved with the new medication, but did not fully resolve. (*Id.* at PageID 50-52.) The

12

ALJ acknowledged that between October 2020 and May 2021, Plaintiff reported having at least three to four migraines per month. (*Id.* at PageID 51-52.) Further, the most recent records dated in August 2021 showed she had approximately two migraine headaches per month even though her medication was "effective." (*Id.* at PageID 52.)

The ALJ concluded his review of the medical evidence by summarizing the evidence related to each of Plaintiff's physical impairments. Regarding Plaintiff's headaches, the ALJ stated: "She generally had only a couple of migraine days per month, which usually responded to abortive medication when she took it as prescribed (Exhibits 1F-24F)." (*Id.* at PageID 53.) The ALJ concluded that "the record does not support symptoms or limitations as severe as alleged" and that "the reduced range of light work in the above [RFC] fully accommodates [Plaintiff's] symptoms and limitations while giving her the full benefit of the doubt with respect to her subjective complaints." (*Id.*)

Defendant contends that "[t]he ALJ properly considered Plaintiff's migraines through his evaluation of the medical evidence as it relates to Plaintiff's subjective symptom complaints and determined an appropriate RFC to correspond with this evaluation." (Mem. In. Opp., Doc. No. 11 at PageID 1215.) The Court disagrees.

The ALJ did provide a detailed discussion of the medical evidence pertaining to Plaintiff's migraines, and he did address the effectiveness of Plaintiff's treatment, her daily activities, and the medical opinion evidence pursuant to applicable regulations. (Mem. In. Opp., Doc. No. 11 at PageID 1216-20 (citing Decision, Doc. No. 7-2 at PageID 47-59).) But he erred in two respects. First, the ALJ did not explain how (or if) the RFC accommodates Plaintiff's migraines, and instead broadly asserted that the range

13

of light work in the RFC accounted for all of Plaintiff's impairments. (Decision, Doc. No. 7-2 at PageID 53.) Second, the ALJ did not explain why the evidence of Plaintiff's daily activities and the medical opinion evidence failed to support the claimed severity of her migraine headaches. (*Id.* at PageID 55-59.) For both reasons, the Court finds that the ALJ did not build the required logical bridge between the evidence and his conclusions.

The Court acknowledges that an ALJ's decision "need not be so comprehensive as to account with meticulous specificity for each finding and limitation, nor is the ALJ required to discuss every piece of evidence in the record." *Correa v. Comm'r of Soc. Sec.*, No. 1:23-cv-685, 2023 U.S. Dist. LEXIS 231766, at *31 (N.D. Ohio Dec. 14, 2023) (citing *Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012); *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004)). Nevertheless, the ALJ must "provide sufficient explanation for the claimant and any reviewing court to 'trace the path of his reasoning'" and explain "with specificity" how the evidence supports the RFC limitations. *Correa*, 2023 U.S. Dist. LEXIS 231766, at *31-32 (citing *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011); *Bailey v. Comm'r of Soc. Sec.*, No. 98-3061, 1999 U.S. App. LEXIS 1621, at *12 (6th Cir. Feb, 2, 1999); *Bledsoe v. Comm'r of Soc. Sec.*, No. 1:09-cv-564, 2011 U.S. Dist. LEXIS 11925, at *12 (S.D. Ohio Feb. 8, 2011)).

Here, the Court is unable to determine how, or whether, the ALJ addressed Plaintiff's migraine headaches in the RFC—and also cannot determine his reasons for either including or excluding limitations related to those headaches. The Court agrees with Plaintiff's assertion that the ALJ's RFC does not account for her need to be off task or absent from work during "unpredictable intervals" when she has a migraine. (Reply,

14

Doc. No. 12 at PageID 1225; *see also* SSE, Doc. No. 9; Reply, Doc. No. 12.) Even if, as the ALJ stated, Plaintiff's migraines "usually responded" to medication (Decision, Doc. No. 7-2 at PageID 53), the fact that the RFC does not allow Plaintiff to be off-task or absent suggests that the ALJ believed that Plaintiff's medication instantly and completely resolves her headaches. The medical records do not support such a conclusion. Thus, the ALJ's failure to build a logical bridge between the evidence and his conclusions prevent the Court from engaging in meaningful judicial review. *See Blakley*, 581 F.3d at 409 (citing *Wilson v. Comm'r of Soc. Sec*, 378 F.3d 541, 544 (6th Cir. 2004)).

### 3. The ALJ's error is not harmless.

The ALJ's error is not harmless. Plaintiff argues that the evidence regarding her migraine headaches supports stricter RFC limitations (for exposure to light, absences, and the need to be off task) that are work-preclusive. (SE, Doc. No. 9 at PageID 1205-06.) The Vocational Expert testified at the November 2021 hearing that a hypothetical individual of Plaintiff's age, education, work experience, and RFC—but with an additional limitation that the individual would be off task for 15% of the workday—would be unable to perform competitive work. (AR, Doc. No. 7-2 at PageID 98.) The Vocational Expert likewise testified that a worker can generally be absent no more than once per month, and that an individual who needed to be absent for three days each month would be unable to be able to perform any competitive employment. (*Id.*) Therefore, the ALJ's failure to explain why he did not include RFC limitations to account for Plaintiff's migraine headaches is not a harmless error.

15

## VI. REMAND

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should further develop the record as necessary, particularly as to Plaintiff's migraine headaches, and evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for Disability Insurance Benefits should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. No. 9) is GRANTED;

2. The Court REVERSES the Commissioner's non-disability determination;

3. No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4. This matter is REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5. This case is terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge